The next case on our calendar is Pablo Star Ltd. v. The Welsh G Good morning, Your Honours. May it please the Court. My name is Richard O'Priel. I represent the appellant, the Welsh Government, in this case. We do not believe that the commercial activity exception to the Foreign Sovereign Immunities Act applies in this specific situation in which there were newspapers that wrote articles about Wales for which the Government had provided them with a photograph of Dylan Thomas, and also that there were two exhibition documents in which the photos were also included. Are these photos we use as a tourist material seeking to enhance tourism to Wales? That's certainly part of it, Your Honour. There was definitely an emphasis on Wales promoting tourism. The Welsh Government was created in the UK in 2006. It was specifically given the responsibility and duty to promote tourism, economic development, and promote the culture of Wales, which is also an important part of this given that we're talking about photos of Dylan Thomas, the poet, who's a unique figure in Welsh culture. The District Court, in denying the motion to dismiss, did not I'm sorry, Your Honour. Consider the EOUs a commercial exception to the FSIA. Tell me why he was wrong. Certainly, Your Honour, and that's what he did do. First, the claims here for copyright infringement, which is a tort, and torts should not fall within the commercial activity exception. Pablo Starr does not dispute that. I'm sorry. You're saying that there can never be a copyright infringement that falls within the commercial activity exception? As a straight copyright infringement, no. If someone puts someone else's copyrighted photograph into materials that are clearly designed to sell something directly, let's say the Welsh government is engaged in sales activity of some product in the United States, and they put this photograph into one of the advertisements for that product, you're saying that categorically can't be subject to the commercial activity exception? Your Honour, it would depend on the particular situation, but certainly Well, if it depends on the particular situation, then the fact that it's a copyright infringement claim is not the end of the case, right? It may not be the end of the case, because the tort exception to Foreign Sovereign Immunities Act may apply, but that's not the issue that we're talking about below. The district court didn't consider that, and neither side discussed it in their briefs. It would not fall under the commercial activity exception, even though the copyright is infringed in the course of what I understand, unlike what's true here, is indisputably commercial activity. Well, I think we have to talk a little bit about the indisputably commercial activity. Selling a direct product. I understand I'm asking you a hypothetical, not about this case. I understand you say that the promotion of tourism here is not a commercial activity. I understand that argument, but I did not understand the argument to be that we can just wrap up and go home, because this is a copyright infringement claim, and it therefore simply does not fall under this exception, and therefore the district court is incorrect, and maybe there's some other exception, remand, and let the district court worry about that. I did not take that to be your argument, and I'm puzzled by it. Is that your argument? That is one argument that was raised in both our briefs. In the reply brief, we noted that that was an argument that Pablo Starr did not respond to. But we also put forth the alternative argument that relates clearly to the facts here. That the district court did not consider the relevant law, and specifically did not consider the Cato case, which this court decided in, I believe it was 2004, where the issue square in that case was whether or not a government entity that promoted the products of their citizens, provided business advice, promoted participation in trade, that that was part of the nature of the sovereign's acts and was not in the nature of commercial activities. But that was a funny case, because in that case, the court, as I read it, conceived the alleged, the relevant activity as employing civil servants, and then was asking, at the next level, the question of, is somebody who works for the city promoting tourism a real civil servant or not? Which is a layer that's not quite in this case. Admittedly, it is not. We do not have the employment case, but we still have the situation where, look at what the Welsh government did. It said, we are going to promote tourism. Back in, they were formed in 2006. They were going to start promoting tourism and culture in 2008. They prepared materials at that time, in 2008 and 2010, which used this copyrighted photo called Just Married. Which was years before Pablo Starr ever allegedly had it assigned to it. They continued to use those pieces in subsequent years. But if you look at them, they're exhibits one and two to the second amended complaint. They tell, on their face, they are dated that they went to press in 2008 or they were done in 2010. The next real issue in why this case started was not about those two pieces of paper or a poster board that may or may not have been distributed to any place in the United States. But the real focus was a claim for copyright infringement against the Welsh government and against a number of different media companies related to an article that those media companies were running. And the Welsh government provided the papers with a photograph that we've talked about. The articles had the advantage of promoting Welsh culture, promoting tourism to Wales. Wales did not publish those photos. It was preparing its brochures and it was distributing photos to members of the news media. The Tribune is the only media defendant left in the case. The others have either been dismissed for personal jurisdiction and they're sued or were never served. But those two activities, providing a photo to a group of newspapers, we don't believe raises the level of commercial activity because it's not engaging in commerce. It's engaging, it is gauging in promoting commerce. And the court in Cato and other district court decisions that have relied on that sense have said exactly that. I believe my time is up. Thank you, Your Honor. Thank you, Counsel. We'll hear from the appellees. Good morning, Your Honors. May it please the Court. Nate Kleinman for Plaintiffs' Appellees, Pablo Star Limited and Pablo Star Media Limited. Your Honors, the district court properly held that the Welsh government is not immune from plaintiffs' claims of copyright infringement, correctly finding that the claims relate directly to commercial activities. How do you distinguish Cato, which Counsel just mentioned during his argument? Sure, so what the court found in Cato was that there wasn't a significant nexus between any alleged commercial activity and the acts which formed the basis of the claims. Cato was a sexual harassment claim brought by a civil servant of the Japanese government. And basically what the plaintiff there tried to do was bootstrap in the sexual harassment claim into the commercial activity exception by saying that her position with the government was related to trade promotion. She would go to trade shows and the like. And what this court found in that case was it's not enough to simply say my job with the government is related to commerce and therefore the nature of my employment is commercial. The nature of the claims were discrimination and harassment. It was not buying and selling things. Right, but what the court found significant was that the Japanese government was engaged in preeminently governmental activities in promoting tourism and Japanese business development. That's true. And that's an analogy to what the Welsh government is doing in this case. That's true, but what the court did not say was that the two are mutually exclusive. The test under the FSIA is a means versus an ends test. So they could very well be promoting tourism. They could be selling tanks or doing any kind of governmental, peculiarly governmental activities, but if the way they choose to do it includes activities which are the kind of activities that regular businesses can engage in, such as licensing photos out, distributing photos out to media outlets, regardless of what the ultimate purpose was, that's the relevant question. It's what were the means that the government took to promote Welsh culture. And are those means inevitably commercial? I'm having a little trouble, and maybe you can help me by focusing what your claims actually are. But your adversary told us that what this case is really about, as far as its New York connection, is a newspaper is writing an article about Wales or about Dylan Thomas, or somehow about Dylan Thomas in Wales, calls up the Welsh consulate and says, have you got a picture of Dylan Thomas? And they hand this picture, which you own, to the news outlet. That doesn't seem to me, they may have done it for the purpose, commercial, governmental, whatever, of promoting tourism, but the activity is responding to a news inquiry from the press. That's not the same thing as the activity of creating a brochure that says, buy this tour, come to Wales, here are the things you can buy when you come to Wales. Again, if we're focusing on the activity versus the purpose, what is commercial about the activity of sending a picture of a celebrity to a news outlet? Two things. First is, they're ignoring a lot of the other facts here, which are, they partnered with a local private tour company to create this walking tour of Greenwich Village using one of our client's photographs. That is a private company. They sent the photos to that company, that company was selling tickets for this tour. Secondly, it's commercial because what the Welsh government did, essentially, is take the place of our clients in this transaction. Our clients purchased the copyrights specifically for this reason, to be able to license these photographs out to private companies, to media outlets, to newspapers. That's a fundamentally commercial act that the Copyright Act provides for, that the copyright owner can say, you can use this photograph, I don't care if it's for tourism or what, but if you want to use it, you have to get a license from me. Quite the contrary of your adversary's argument that copyright infringement cannot be commercial activity, one of your arguments seems to be that copyright infringement is almost inherently a commercial activity. Even though they're doing it gratis, by usurping the fact that you could sell that photo, you're saying that's commercial almost no matter who they give it to and for what purpose. That's correct. Copyright is literally a monopoly of rights. What the Welsh government did here was copy, publish, distribute the photographs. Those are taken together, essentially, all of the rights. Theft is not a commercial activity, is it? No, certainly not, but it's not the theft, it's the distributing of the photographs. That itself is not illegal if they had the rights to do it. Robin Hood is engaged in commercial activity because if he steals something, that's not commercial, but when he gives away something that the owner of the property had a right to sell, that's commercial activity? No. What the commercial activity here is, is using photographs in advertisements, in promotional materials. It wasn't their photograph to use. In order to do that, they had to get a license from our clients. Okay, so that again, to me, tends to distinguish a little bit the newspapers from the tourism brochures. All of it, I'm afraid, just continues my everlasting puzzlement about how distinguish what is the activity from what is the purpose of the activity. I kind of get it and welt over that what the Argentine government is doing is for the purpose of financing government activities, but what they're doing is selling bombs. How that works in a case like this, I'm not sure where promotion of tourism fits in as, is that a purpose or is that an activity? Isn't your argument that the test is that the activity is the same type of thing that another entity might do for profit? Correct. So the commercial activity exception says basically, if the government is acting as a private actor in the market as opposed to a regulator of a market, it's not doing something that is peculiar to government. In other words, it's acting like any other business, like our clients would have preferred to be in that position to license out the photos. And so it can't claim sovereign immunity by saying, well, we did that, but we did it for altruistic reasons. Delta Airlines gets the rights to fly direct from New York to Cardiff and then says, we're going to advertise this on the roofs of taxicabs saying, come to that picture on it. They would clearly be engaging in commercial activity, even though they're not directly saying fly Delta. They're directly saying, come see the birthplace of Dylan Thomas, where some guy has set up a tourist trap. They're maybe altruistically promoting that person's tourist site, but it's not really altruistic because they're in commerce. And when the same thing that Delta Airlines might do, is that the argument? That's absolutely the argument. And we see it all the time. You see commercials that are promoting a particular country, whether it's avocados from Mexico or Aruba, a government can take out an ad at the Super Bowl and promote its country. The taking out of the ad using copyrighted materials, if they had used another company's trademark, that would certainly be commercial activity, regardless of what they're promoting. Because it's not the government that could do that, but the avocado producers co-op, which would be an entirely private enterprise, could do the same thing. And if they did it, no one would doubt that that's commercial. If the government does it, you're saying it's the same kind of thing. That's correct. And so the argument that a copyright infringement is by definition not commercial is just wrong. Tortious conduct is what the commercial activity is there for. There's a separate exception for non-commercial torts that was put in place for when a diplomat, you know, runs someone over while they're in the States. But there's no doubt that a copyright is a commercial, copyright infringement is commercial. Breach of contract is tortious conduct. The Supreme Court made very clear in the Weltover case that repudiation of a contract is not subject to sovereign immunity. It's the same thing here. And in terms of Cato, we have the opposite. So in Cato, it was a non-commercial tort and tied to a somewhat amorphous commercial role. Here we have a very plainly commercial tort, which is infringing a copyright, that may have been tied to promotion of tourism and culture. Thank you. Thank you. Mr. O'Parrell, you've reserved two minutes for rebuttal. Thank you, Your Honor. Let me just say very briefly that, to go back to Judge Park's question about isn't that automatically a private activity? Well, there was really the same issue in Cato because hiring employees is also an activity that anybody can do, whether they are public or private. I assume the employee was hired in Tokyo, not in New York. And that the thing that happened in the United States was the sexual harassment, which might otherwise violate New York and federal law, but for this immunity. Correct. I believe that that is correct, Your Honor. As you argue that you're immune from the copyright charges for the same reason that the Japanese government was immune from the sex harassment charges. Well, that is certainly possible because the court in Cato said that when you're engaged in, when a government entity is not in the nature of a commercial activity for which. It's essentially government activity. Correct. And it's also activity that private parties don't typically engage in. Private parties don't typically promote an entire country or region. There was no profit motive, certainly here by the Welsh government. They didn't sell anything. They didn't receive any money. The only benefit that they got was to comply with their statutory mandate under United Kingdom law. I also wanted to correct one factual error that I believe counsel made, which was he said that the Welsh government partnered with a New York tour company. That's not correct. In one of the brochures, it's the government simply made reference to the fact that this company was providing tours for a fee that they charged. The record is clear that the Welsh government got no money from that. They were just wishing them well as part of this brochure, which is at page A154 and 55 of the joint appendix. And lastly, I'm out of time. If I could just point your honors to the argument at the end of our briefs of that. Even if there was commercial activity here, there was insubstantial contact with the United States on which the claim is based to hold Welsh government in the case and have sovereign immunity waived. Thank you, your honors. Thank you, counsel. Thank you both. We'll reserve decision.